Case number 20-1104, United States of America v. Daniel Trevino, arguments not to exceed 15 minutes per side. Mr. Friedman, you may proceed for the appellant. Good morning. Good morning. Good morning, your honors. I would like to reserve three minutes of time for rebuttal. Very well. Well, while my briefs are very long in this case, I don't believe that my oral arguments will be. I'm going to be concentrating today on issues one, touching on issue two, which is the 538 appropriation measure, and then turning to issue six, which is the unreasonableness of the sentence. I will, of course, be available to answer questions on any of the remaining issues. My focus today I think is going to be on issue one, which I think to a certain extent has been an issue that has somehow been lost to the pages of legal history. But I believe that the trial judge committed reversible error in excluding evidence of my client's belief in legality of his conduct once the government chose to proceed on a conspiracy theory. In cases which are malin prohibitive, which I believe marijuana is, a mistake of law, be it through the advice of counsel or otherwise, is in fact a defense. The Powell Doctrine, which has a long history in American law and I acknowledge has been a somewhat criticized doctrine, survives today. The Lambdon ruling, which adopted it in the circuit, has never been overruled. Has it been fouled lately, the Powell Doctrine in our circuit? No, it has not, sir. Well, there is the case from 1980 in the United States District Court for the Western District of Michigan, which did follow it. So that would be within my lifetime, ergo the last 50 years. I mean, is it odd that the doctrine hasn't been fouled in so many years? Does that is that significant at all? Well, legally, I believe it is not because Sixth Circuit decisions, whether old or new, are still binding precedent. And when my opponent points to the Controlled Substance Act to state that it's been overruled, he doesn't cite to a chapter and verse. And there is no case that is published that goes to the contrary on that. Jovenport doesn't mention it. But in that extent, and I guess I'm importing a British special here, I believe it is per incurio. I would break aside and say if even if I lose on this issue, I would ask for publication on this ruling so that I am the only one who has to go down this that's overruled it. But the doctrine is if the Supreme Court decisions are contrary, they abrogate our decisions. And why isn't our doctrine here abrogated by Supreme Court precedent? Well, my question would be, which Supreme Court president? Clearly, Justice Stone did not like it, but the court didn't reach it. And if anything, since 1980, the United States Supreme Court has been moving to the point that a mistake of law can be a defense to a regulatory defense, can be a defense to income tax, it can be a defense in firearms cases. Okay, so counsel, I would point to first of all, there's the Supreme Court's decision in Ingram, which involved conspiracy to evade and defeat the payment of federal taxes on lottery operations. Also, I would assume Malum prohibit them. And in that case, the Supreme Court says, there need not, of course, be proof that the conspirators were aware of the criminality of their objective. So Ingram seems to be a Supreme Court case, an intervening Supreme Court case, in fairness, not cited by the government. The government doesn't draw this case to our attention or the FIOLA case. But that does suggest to me that perhaps that was under the general conspiracy statute, that perhaps Supreme Court doctrine has intervening Supreme Court doctrine has overruled Landon. How would you respond to that? I would ask for an opportunity to file a supplemental because the government did not those cases. And I would go into the briefs, I would look at how it was briefed. And I would answer it accordingly, Your Honor. What I would point out is that in this case, my client had a number of state court wins, stating that he was compliant, there were there was evidence in which a reasonable person could believe that their conduct was legal. Let me ask this question. So even if we thought that Landon is still good law, and you're right, there's no Sixth Circuit precedent overruling or distinguishing Landon. Landon seems to be a one trick pony, but a very old one. Landon itself, I'm not sure helps your client. So everyone has been focusing on the but the second prong. So what Landon says is that ignorance or mistake of law may be a defense to conspiracy where the contemplated act is not inherently wrongful, and where the prohibitory statute is ambiguous. So there you have this very complicated way of measuring the amount of liquor that you drug us could dispense for medicinal purposes during provision. The court spends most of its time focusing on how complicated the statute was and how anybody could reasonably be confused about how to measure what's complicated about the Controlled Substances Act that says you can't possess, distribute, etc. Anything on schedule one and there you go. If that's where it ended, I would submit that you were correct, where I believe that we continue down the journey is when we read it in Pari Materia with the Appropriations Act, when we read it in recognition of the acquiescence of states being allowed to engage in. Right, but the Appropriations Act doesn't, that first of all, the Appropriations Act, does that go to the merits of, is that a defense on the merits? It's difficult. When I prepared for oral arguments, I assumed that the big question I would be answering today was whether or not this was a defense for purposes of the conspiracy law. Obviously, as a veteran of the Michigan Supreme Court, I think your Honor, first of all, probably thought the moment that you got promoted to the Federal Court of Appeals, you would never have to hear another Michigan medical marijuana case. But secondly, in state medical marijuana laws, by definition are obtuse because they make three left turns to avoid making a right turn. They speak in the negative, they give you immunity. The question is, what's ambiguous about the Federal Controlled Substances Act? If you divorce it from the state and the Appropriations Act, I would have to concede it's not ambiguous. My client did not have one of the few limited federal licenses. And here, the conspiracy, the scope of the conspiracy was charged from 2010 to 2017, right? And so any ambiguity, even that could arise from Section 538, even if we thought that the Appropriations Act affected the merits of your claim, that doesn't come into play until 2015, right? So what's the argument from 2010 to 2015 that there was anything ambiguous about the Federal Controlled Substances Act and its interplay with state law? My reading of the Appropriations measure would be that a hypothetical 2014 violation of the act would still be enjoined if it was prosecuted in 2015. Um, what about 2010? I don't believe it said any the act it in here, the statute speaks for itself. And I'm sure Mr. Fouson will be happy to correct me if I'm wrong. But my reading is, is that it retroactively protects state as long as it was compliant with state law, right? But the question here on the let's just say from 2010, let's give you 2014. So from 2010 to 2013, reasonably would have known that his conduct was in violation of federal law, whether there was any ambiguity about whether his client, whether you were in violation. So even if we treat Section 538 as somehow affecting the first three years of the conspiracy. I take your point, Your Honor. I'm not sure beyond relying on my briefs how much further I can answer that question. Fair enough. We can move on to another topic. In my last two minutes, I'm going to just jump ahead to my last argument, the substantive unreasonableness. My client was sentenced to a sentence of over 15 years for the sale of marijuana in quantities that would be legal in many states, which the more it would be. And while I admit that my client could never have been licensed under Michigan law because of his prior conviction, there was no evidence as much as my opponents tried to find it, that there was any diversion, that people who didn't have appropriate paperwork were provided the marijuana. And the answer that Judge Maloney offered in the district court, that if the commission wished to change the classification of marijuana, they had the power to do so, was recently answered by this court indirectly in Jones case, where they pointed out that they do not have the voting quorum to do that. So for those reasons, I believe that the sentence is unreasonable. There are many people who are selling the exact same quantities of marijuana and are totally protected right now. With 57 seconds left on the clock, I will yield for any questions the court might have. All right. Any further questions, Judge Cook, Judge Larson? Judges, Mr. Freedman has asked permission leave to file a supplemental brief to address the Supreme Court case that was not cited by the government. I would be inclined to grant the motion and give him five days to file a supplemental brief and the government to file a response within five days later. Is there any objection to do that? No. No, none. I would just point out for counsel's benefit that the cases are Ingram, United States versus Ingram or Ingram versus United States and FEOLA, F-E-O-L-A. All right. Mr. Freedman, you may file a supplemental brief addressing those cases within five days and the government can respond within five days thereafter. All right. I'm making this call from vacation in Florida. Would it be possible to get seven instead of five days? Sure. Sure. You can have seven. Sure. And the government five days after that. Very well. All right. Let's hear from the government. Thank you, your honors. The government would request that the court affirm conviction and sentence because he was running a statewide medical marijuana dispensary operation that was completely in violation of not only federal law, but also state law. With regard to the land and issue that I believe my opposing counsel spent most of the time on, the government submits that Cheek v. United States effectively abrogates the land and doctrine. It stands for the rule that ignorance of the law or mistake of law is really no defense to criminal prosecution, except in very few limited instances. And those instances are typically taxed. This court has recognized that in United States v. Roth, which was cited in the Substances Act, there is no willfulness requirement whatsoever. It's not listed as a requirement in either the substantive offenses of distribution or possession with the intent to distribute or manufacturing, all of which Mr. Trevino was also convicted on. Nine of the counts of which he was convicted, he was convicted in 10 total, comprised those substantive offenses. And so my adversary's arguments with regard to Landon and having this heightened mens rea needing to be grafted onto conspiracy to show corrupt motive have simply no bearing on the remaining nine substantive offenses of which Mr. Trevino also was convicted, one of which also carried a mandatory minimum sentence of five years in prison. So, counsel, I am a little bit concerned about this Landon issue. I mean, I'm not sure that Landon, it might be distinguishable along the lines we talked about requiring ambiguity, although the government didn't make that point. And I mean, your response on Landon is, well, yeah, okay, maybe it's a precedent of this court, but there have been a lot of cases that haven't applied it. And CHIC, which stands for the, quote, general rule that ignorance of the law or mistake of law is no defense. I think what Mr. Friedman would say is, well, there's a, it might be the general rule, but there's a specific precedent on point, Landon, that says, when it's malum prohibitum, you have to prove knowledge that your conduct was criminal. I'm not sure that just saying there's a general rule is enough. Well, Your Honor, I respect that question, certainly, and why it's being asked. I think with respect, first of all, I wouldn't concede that controlled substances offenses are necessarily malum prohibitum. I think my adversary is trying to treat marijuana differently. And I would note that, although certainly I would acknowledge that there are changing societal views, certainly that are coming through various state legislatures as to how marijuana should be treated, Congress has not changed it yet from being a Schedule I controlled substance. And so any of those authorities that are being cited to that effect, I think the court simply shouldn't be crediting, given that state law defenses are simply no defense to federal criminal prosecution based on the supremacy clause in the Supreme Court's decision in the Gonzalez and Raich cases. Can I move you on? Sorry, I asked the question, you answered it. Now I want to get you on to something else. Absolutely. Can you talk to me about the appropriations issue? So your response on the appropriations issue is that the appropriations bill, the text of the bill doesn't cover this conduct, because it applies only to states as states, as opposed to question or concern. But it is whether an individual can even assert, not as standing, not as an Article III standing matter, but as a sort of cause of action matter, what gives an individual the right to assert an appropriation as either a defense or as a reason to enjoin a federal prosecution or to dismiss a federal indictment. And I wonder about that, because the Anti-Deficiency Act has its own set of remedies for violations of appropriations laws, right? So the Anti-Deficiency Act says that if federal officials violate appropriations, they spend money in excess of an appropriation. Once it's discovered, they have to report to, I think it's to the Comptroller General. There are disciplinary actions for officials who do that. There are even criminal prosecution for officials who do that. I want to know why isn't that an exclusive remedy? I mean, we don't often infer remedies, especially where Congress has already created some. So the McIntosh opinion doesn't deal with this either. I'm wondering if you have any thoughts. I'll try to unpack that, Your Honor. I will at least admit to you right now, I didn't brief the Anti-Deficiency Act. I'm not entirely familiar with it. I think what Judge Maloney in the District Court got right, assuming McIntosh would provide a private litigant a remedy such as an injunction. Again, our position is that the Ninth Circuit expanded McIntosh well beyond the plain language of its statutory meaning. But to the extent if this panel were to rule that McIntosh could be that it is simply an injunctive remedy. Because my understanding in researching this is that there is Article III standing for a private litigant to bring claims based on violations of the Appropriations Clause of the Constitution. And where does that, oh, so Article III standing, fair. Article III standing. My concern was more about the cause of action. Okay, I'll let you. So the cause of action, I don't think there's a independent cause of action. This is simply a remedy for injunctive relief. Courts, even in the Ninth Circuit where McIntosh was created, have determined or have ruled that it is injunctive by characteristic. Because if Congress changes the appropriation and strips the 538 section off, there is no remedy anymore. And so at that point, it doesn't actually get dismissal of an indictment, I would argue. It simply shuts off the government's ability to spend funds to do it. If we were, I'm clearly, I work for the Department of Justice as an Assistant United States Attorney. But let's say for a hypothetical, I work for the Department of Homeland Security in some prosecutorial division. McIntosh and Section 538 would not apply to me whatsoever. It simply prevents the government from spending funds. These Ninth Circuit authorities also have determined and ruled that it doesn't prohibit the government from spending funds on litigating an appeal. So I think this is an issue where the Ninth Circuit has gone well beyond what the statute intended, which is simply to prevent the federal government from taking actions against the state itself. So I would concede that if the Department of Justice and the Drug Enforcement Administration were going out and prosecuting people who worked at the Michigan Medical Marijuana Registry as state officers, registering patients under the act and handing out caregiver cards and doing administrative functions of the act, we would be preventing the state from implementing the act. In my mind, in our argument is this really gets to a distinction between preventing something and having the possibility of interfering with something. Is that getting down to the definitional level of those two terms? It certainly is. But prevent is used in the Ninth Circuit went too far in claiming that private litigants, such as Mr. Trevino, would have the ability to enjoin a federal criminal prosecution on the grounds that trying to prosecute them for marijuana crimes would actually prevent the states from implementing their medical marijuana laws. I would further note on this point, just to close it, that there is absolutely no mention of the Controlled Substances Act in the Appropriations Bill, nor does it, by its plain terms, abrogate it. And under a Supreme Court precedent to give private litigants a cause of action, they're supposed to be specifically mentioned within the authority giving them that private remedy, if you will. I don't even want to call it a cause of action because it's not that. Yeah, but you'd need a cause of action even to bring I mean, you say it's a claim for injunctive relief. So enjoining a federal prosecution is like a pretty big thing. You say it's a claim for injunctive relief, but I don't know how you can. I mean, we would have to imply a cause of action, either under the Constitution, or, I mean, I don't know, under what else. And so I'm struggling. Other than McIntosh itself, is, do you know of any other case in which a criminal defendant has been allowed to enjoin a federal prosecution on the basis of an appropriation bill? Aside from the cases that follow McIntosh in the Ninth Circuit, I looked at this yesterday to be ready for this argument, no other circuit courts of appeal have adopted McIntosh. Well, they haven't adopted McIntosh, but has anybody, I mean, outside of the medical marijuana, it's like, has Congress ever tried to use its power of the purse to direct federal prosecutions? Because that's what seems to be happening here. We still have the Controlled Substances Act, it still exists, for good or for ill, we have it with respect to marijuana. And what Congress is doing is telling the executive, you can't enforce the generally applicable law under this class, against this class of persons. It seems to me like it's kind of a dangerous separation of powers problem. I would submit that it is. And I don't know that I've ever seen it before. I am not aware of it in any context other than this one, Your Honor. And to finalize, sort of close the loop or try to on the Section 538 argument, setting aside whether there is a appropriation statute, based on the record in this case and the evidence that came in at trial, I think this court can find, because the court is allowed to decide its appeal on evidence that's in the record, that Mr. Trevino was nowhere near in compliance with the Michigan Medical Marijuana Act. At trial, evidence was submitted that he generated at least $2.9 million in proceeds, that he was a convicted felon. And under the Michigan Medical Marijuana Act, you are only allowed to be a caregiver so long as you don't have a prior drug felony, which Mr. Trevino did. And that precluded him from being a caregiver. And even if he... Was that introduced at trial, though, his felon status? I mean, his felon status seems... That was introduced at sidebar, Your Honor, because Mr. Trevino did take the stand. And one of the themes of this trial was that despite at least 15 law enforcement searches by the state, which should have tripped Mr. Trevino off that he was not acting in compliance with state law, then the Drug Enforcement Administration and federal agents searched him. And even after they did that in May 3rd of 2016, he continued on for two more years. And so a theme of this trial was he never stopped. And so after I was done with my cross-examination of him bringing that issue out, the fact that he, despite having knowledge and being put on notice that what he was doing could not be legal because of all of these searches, my opposing counsel, Mr. Bostic, who was Mr. Trevino's counsel at the time, asked the judge, can I ask him to explain why he never stopped? Which meant he wanted to get into Mr. Trevino's knowledge about whether he was violating the law or not. And at that point, I said, Your Honor, if that happens, then I should be allowed to raise Mr. Trevino's prior felony drug convictions, which exclude him and preclude him from being a caregiver under the law, which by the way, only allows him to possess up to 2.5 ounces of marijuana for up to five patients that he is specifically linked to under the Michigan Medical Marijuana Registry. Instead, he was growing and cultivating marijuana and purchasing it for distribution on an industrial scale. So regardless of whether or not the individuals purchasing it from him at his dispensaries were registered and had Michigan marijuana patient cards or not, that would not have brought him into alignment with state law. And for all those reasons, I think the court can find if it decides it wants to pitch the 538 issue for a case where somebody in the future might look to be more in compliance with the law, it can decide this appeal based on the facts in the record alone that Mr. Trevino was not in compliance, even though that was not an issue at trial. Okay. All right. Any further questions for the government? Judge Cook? Judge Larsen? Okay. Thank you. Mr. Friedman, you have three minutes of rebuttal. You're muted. I apologize. Can people hear me now? Yes, we can. Responding to what Mr. Fouson said, I think that there were two sides of the coin about Mr. Trevino's knowledge and reliance. It was the fact that he was constantly raided and ultimately prevailed on those, which I think may have reinforced his belief that he was above board, that they couldn't find anything. And that's one of the reasons he actually believed that he was valid. Whether it's a defense or whether it is not a defense, I have no doubt that Mr. Trevino thought that he was and I'm in a somewhat awkward position because I'm a veteran of many of the cases in Michigan that have shut down dispensaries when people have tried to argue that they were legal. So having been in the weeds for so long, the legal weeds, I don't see the world the same way that the people in the industry who hear from industry publications and talk to one another see it. People versus agro, unfortunately, one of the lead Michigan cases did go down on my watch, but the lower court actually had found that medical marijuana laws were so confusing that it should apply only prospectively and the Court of Appeals disagreed. Section MCL-333.26424 is a statute that talks about primary caregivers and what it doesn't address is whether there is secondary caregivers and people who can provide assistance. People are given immunity for assisting at least patients. We're not sure about caregivers to this date and what that means. The only case that we had in Michigan involving this at all involved sticky notes that somebody helped prepare. So there are a lot of issues, even on its more than 10 years, I think 12 years old that have not been resolved under Michigan's medical marijuana law. But this is, of course, not a state court and that really doesn't matter. Should the court not address the 538 issue but have doubts, I would encourage the court to at least put it out there to suggest it so that the many other marijuana providers in the state of Michigan, and they're pervasive, or at least on some notice so that if they continue, they're doing so at their own risk because I think that there is a widespread belief in Michigan that they're protected and as a lawyer, obviously, I see some of the problems with this protection but there are many other lawyers who think it's ironclad. Thank you, your honors. Okay, any further questions, Mr. Friedman? All right, case will be submitted. Thank you for your time. Thank you, Mr. Friedman. Thank you for your time. Thank you for the argument, counsel.